UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

KATE LYNN GARVIN,

    Plaintiff,

v.                                            Case No.:  2:23-cv-1027-SPC-KCD

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Kate Lynn Garvin sues under 42 U.S.C. § 405(g) to challenge the Commissioner of Social Security's decision denying her application for disability benefits. (*See* Doc. 1.)[1] For the reasons below, the Commissioner's decision should be affirmed.

Garvin raises one issue on appeal—whether the administrative law judge ("ALJ") properly considered medical opinion evidence from her social worker, Ashleigh DePalma. (Doc. 16 at 8.)

"It is the ALJ's job to evaluate and weigh evidence and to resolve any conflicts in the record." *Gogel v. Comm'r of Soc. Sec.*, No. 2:20-CV-366-MRM, 2021 WL 4261218, at *9 (M.D. Fla. Sept. 20, 2021). Therefore, "[r]eview of the

---

[1] Unless otherwise indicated, all internal quotation marks, citations, case history, and alterations have been omitted in this and later citations.

Commissioner's (and, by extension, the ALJ's) decision denying benefits is limited to whether substantial evidence supports the factual findings and whether the correct legal standards were applied." *Holland v. Comm'r of Soc. Sec.*, No. 2:21-CV-858-KCD, 2023 WL 2300593, at *2 (M.D. Fla. Mar. 1, 2023). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). It is more than a mere scintilla but less than a preponderance. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). As the Supreme Court has explained, "whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek*, 139 S. Ct. at 1154.

When deciding whether the ALJ's decision is supported by substantial evidence, the court must view the record as a whole, considering evidence favorable and unfavorable to the Commissioner. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995). The court may not reweigh the evidence or substitute its judgment for that of the Commissioner. And even if the evidence preponderates against the Commissioner's decision, the reviewing court must affirm if the decision is supported by substantial evidence. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Finally, "[u]nder a substantial evidence standard of review, [the claimant] must do more than point to evidence in the record that

2

supports [her] position; [she] must show the absence of substantial evidence supporting the ALJ's conclusion." *Id.*

Turning to the facts here, the ALJ found Garvin had several severe impairments, including: "degenerative disc disease of the cervical spine; migraine headaches; anxiety disorder; bipolar disorder; opioid use disorder in sustained remission; bilateral plantar fasciitis; and left shoulder arthritis." (Tr. 27.)[2] Still, according to the ALJ, Garvin retained the residual functional capacity ("RFC") to perform "light work" with other physical limitations such as "never climb ladders or scaffolds or crawl." (*Id.* at 29.)[3]

After considering the RFC and testimony from a vocational expert, the ALJ determined that Garvin could not perform past relevant work but could perform other jobs. (Tr. 35-36.) Because Garvin could work, the ALJ found her not disabled as the term is used in this context. (*Id.* at 37.)

---

[2] Citations to the administrative record are designated by "Tr." with a pin-cite where applicable.

[3] An individual claiming disability benefits must prove she is disabled. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). "The Social Security Regulations outline a five-step, sequential evaluation process used to determine whether a claimant is disabled: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a residual functional capacity assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011).

As mentioned, Garvin argues the ALJ erred in assessing medical opinion evidence from social worker Ashleigh DePalma. (Doc. 16 at 8.) "A medical opinion is a statement from a medical source about what the claimant can still do despite her impairment(s) and whether she has one or more impairment-related limitations or restrictions." 20 C.F.R. §§ 404.1513(a)(2), 416.913(a)(2). "When confronted with a medical opinion, the ALJ must consider its persuasiveness using several factors: (1) supportability; (2) consistency; (3) relationship with the claimant, (4) specialization; and (5) other factors." *Mercado v. Comm'r of Soc. Sec.*, No. 6:22-CV-287-DCI, 2023 WL 145154, at *1 (M.D. Fla. Jan. 10, 2023).

Supportability and consistency "are the most important factors" in determining persuasiveness. 20 C.F.R. §§ 404.1520c(b)(2); 416.920c(b)(2). As such, the ALJ must explain "how [he] considered the supportability and consistency factors for [each] medical source's medical opinions." *Id.* Put simply, the ALJ must assess the factors of supportability and consistency for each medical opinion. *Thomas v. Comm'r of Soc. Sec.*, No. 6:21-CV-100-EJK, 2022 WL 14816626, at *2 (M.D. Fla. Aug. 3, 2022).

"Supportability" refers to whether the source's medical opinion finds support within the "objective medical evidence" they cite. 20 C.F.R. §§ 404.1520c(c)(1); 416.920c(c)(1). "Consistency" is a measure of how the medical opinion aligns with evidence from other sources (medical and nonmedical). *Id.*

4

§§ 404.1520c(c)(2); 416.920c(c)(2). To state the obvious, a medical opinion is more persuasive if it is supported by the source's own evidence and consistent with the remaining record.

"[C]onclusory statements about consistency and supportability are insufficient to show that substantial evidence supports the ALJ's decision." *Mercado*, 2023 WL 145154, at *5. But "there is no rigid requirement that the ALJ specifically refer to every piece of evidence." *Marone v. Comm'r of Soc. Sec.*, No. 2:14-CV-616-FTM-CM, 2016 WL 1253575, at *7 (M.D. Fla. Mar. 31, 2016). What matters is whether "a reviewing court can make a meaningful assessment of a challenge to an ALJ's evaluation of the persuasiveness of [the] medical opinions." *Works v. Saul*, No. 4:19-CV-01515-MHH, 2021 WL 690126, at *15 (N.D. Ala. Feb. 23, 2021).

As part of Garvin's treatment, DePalma completed a "Questionnaire as to Mental Residual Functional Capacity." (Tr. 1347.) She found that Garvin had extreme limitations (meaning an inability to function "over 50% of the work day or work week") in several functional areas: respond appropriately to changes in a work setting; behave predictably, reliably, and in an emotionally stable manner; and tolerate customary work pressure. (*Id.*) She also found marked limitations (meaning an inability to function "from 25% to 50% of the work day or work week") in several areas: accept instructions from or respond appropriately to criticism from supervisors or superiors; respond appropriately

5

to co-workers or peers; perform and complete work tasks in a normal workday or workweek at a consistent pace; work in cooperation with or in proximity to others without being distracted by them; carry through instructions and complete tasks independently; maintain attention and concentration for more than brief periods of time; perform at production levels expected by most employers; and remember locations and workday procedures and instructions. (*Id.* at 1347-49.) Finally, according to DePalma, Garvin displayed moderate or mild limitations in all remaining areas listed. (*Id.*) Ultimately, DePalma concluded Garvin's condition would deteriorate if "she is placed under stress, particularly that of a job." (*Id.* at 1350.)

    The ALJ rejected DePalma's opinions, explaining:

> [They are] not consistent with or supported by ongoing severe and extreme clinical abnormalities reflected in ongoing mental health treatment notes during the relevant period which generally show only partial mood abnormalities and impaired judgment and insight but with intact attention, concentration, memory, fund of knowledge, cognition, intelligence, speech, perception, motor activity, thought content, and thought processes. Additionally, claimant did not seek, receive, or require emergency or inpatient care during the relevant period for psychological or psychiatric distress as would be expected for someone with marked and extreme ongoing limitations as indicated by the opinion and the claimant continued to perform a wide range of activities of daily living as outlined above.

(Tr. 34.)

Garvin first claims the ALJ erred by relying on her lack of inpatient treatment to discount DePalma's conclusions. (Doc. 16 at 10.) According to Garvin, this amounts to the ALJ substituting his own judgment "on how an individual with marked to extreme mental limitations should be treated." (*Id.*) As she puts it, the ALJ "[e]ffectively … discounted the opinion because [she] was not treated in the manner that he believed was appropriate for an individual with her opined limitations." (*Id.*)

The Court is unpersuaded. It was not improper for the ALJ to look at Garvin's medical treatment or lack thereof. An ALJ can properly discount subjective complaints or medical opinions about extreme mental limitations based on a lack of treatment. *See Mokhtarians v. Comm'r of Soc. Sec.*, No. 8:20-CV-1795-CEH-AAS, 2022 WL 766399, at *4 (M.D. Fla. Mar. 14, 2022) ("The regulation does not prohibit the consideration of evidence that a claimed did not visit a hospital or ER."); *Limle v. Colvin*, No. 8:12-CV-730-T-TGW, 2013 WL 3432227, at *13 (M.D. Fla. July 8, 2013) ("The law judge could reasonably conclude that the absence of additional hospitalizations indicated that the plaintiff's mental impairment was not disabling."). Garvin would have a point if the ALJ rejected DePalma's assessment based *solely* on her lack of treatment. It goes without saying that a claimant need not be institutionalized to show mental disability. *See, e.g.*, *Wallace v. Barnhart*, 256 F. Supp. 2d 1360, 1372 (S.D. Fla. 2003). But that's not what happened here. Rather, the ALJ

7

used Garvin's unremarkable treatment history as just one data point among many, which is appropriate. *See, e.g.*, *Kidd v. Berryhill*, No. 6:18-CV-790-ORL-28JBT, 2019 WL 2028671, at *3 (M.D. Fla. Apr. 12, 2019) (holding "the heart of the ALJ's reasoning ... that [the doctor's] severely restrictive opinions were inconsistent with the lack of any psychiatric hospitalizations or even emergency room visits, the lack of dire objective findings reflected in the treatment notes, and the lack of increased frequency of visits coinciding with the supposed worsening of Plaintiff's condition … [were] reasonable conclusions from the evidence").

Next, Garvin accuses the ALJ of fixating on her "mental status exam findings" to discount DePalma's opinions. (Doc. 16 at 12.) This is improper, she explains, because "the ALJ's narrow focus on only objective observations betrayed his lack of recognition for the inherently subjective nature of mental illness." (*Id.*)

Two problems. First, the ALJ did not rely "on only objective" evidence. (*Id.*) He also contrasted DePalma's opinions with Garvin's reported daily activities and the types of treatment she received. (Tr. 34.) This type of non-objective evidence is relevant and proper for consideration. Second, Garvin points to no authority (statutory or otherwise) that prohibits an ALJ from discounting a medical opinion on purely objective findings. *See, e.g.*, *Sy S. v. Comm'r Soc. Sec. Admin.*, No. 6:22-CV-01934-SB, 2024 WL 2292447, at *4 (D.

8

Or. May 21, 2024) ("An ALJ may discount a medical opinion on supportability grounds where there is a lack of objective medical evidence to support the opinion.").

Pivoting slightly, Garvin accuses the ALJ of "cherry-picking" evidence "to mischaracterize the consistency and supportability" of DePalma's opinions. (Doc. 16 at 14.) This argument is equally unpersuasive. To be sure, an ALJ may not cherry-pick evidence to support a disability finding. *See Dicks v. Colvin*, No. 3:15-cv-934-J-MCR, 2016 WL 4927637, at *4 (M.D. Fla. Sept. 16, 2016). Yet "[a]n ALJ is not required to refer to every piece of evidence in his decision." *Raulerson v. Acting Comm'r of the Soc. Sec. Admin.*, No. 3:20-CV-972-MCR, 2022 WL 855765, at *10 (M.D. Fla. Mar. 23, 2022). Synthesizing these concerns, a claim for cherry-picking arises when the ALJ "*failed to consider a particular piece of evidence.*" *Poelker v. Comm'r of Soc. Sec.*, No. 2:21-CV-880-JLB-NPM, 2023 WL 6940241, at *2 (M.D. Fla. Mar. 10, 2023) (emphasis added). And by contrast, it is not cherry-picking where the ALJ merely specifies "the evidence that supports his conclusion." *Spencer v. Kijakazi*, No. 8:21-CV-946-WFJ-TGW, 2022 WL 8224085, at *4 (M.D. Fla. Aug. 26, 2022).

Garvin has not shown the ALJ failed to consider the evidence she offered. And the record undermines any suggestion otherwise. The ALJ spent several pages discussing Garvin's testimony and subjective complaints, the medical

9

treatment records, her daily activities, and the prior administrative medical findings. (Tr. 29-35.) Then, in assessing DePalma's opinions, the ALJ referred to the record as developed and recited several reasons for discounting her conclusions. Nothing more is needed here. *See, e.g., Martinez v. Saul*, No. 620CV00807ORLDCI, 2021 WL 3550347, at *3 (M.D. Fla. Aug. 11, 2021); *Moore v. Kijakazi*, No. 8:23-CV-206-AAS, 2023 WL 8187216, at *6 (M.D. Fla. Nov. 27, 2023) ("The regulations do not prevent an ALJ from referring to evidence discussed elsewhere in the decision when evaluating medical opinions.").

The rest of Garvin's brief discusses evidence that purportedly supports DePalma's conclusions. For instance, she notes that her symptoms were documented "to be severe and impactful on most aspects of her daily life, she required intensive and ongoing therapeutic care on a regular basis, and her paranoia significantly limited her ability to function without accommodations and support." (Doc. 16 at 13.) But the question now before the Court is not whether the record allows an alternative determination. At issue is whether the ALJ's decision is supported by substantial evidence. *See, e.g., Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007). Even if the medical records and opinions, combined with Garvin's testimony, may support an alternative determination, there remains substantial evidence to uphold the ALJ's rejection of DePalma's extreme opinions. Among other things,

Garvin's treatment notes reflect only partial mood abnormalities and impaired judgment and insight but with intact attention, concentration, memory, fund of knowledge, cognition, intelligence, speech, perception, motor activity, thought content, and thought processes. (*See, e.g.*, Tr. 868, 1306, 1320, 1398, 1433.)

As mentioned, what matters is whether "a reviewing court can make a meaningful assessment of a challenge to an ALJ's evaluation of the persuasiveness of [the] medical opinions." *Works*, 2021 WL 690126, at *15. There is enough here for meaningful review. The ALJ's detailed consideration of Garvin's treatment history, medical records, and other evidence show why he found DePalma's opinions unpersuasive. Remanding "would [thus] be a wasteful corrective exercise in light of the evidence of record." *Sanchez v. Comm'r of Soc. Sec.*, 507 F. App'x 855, 856 (11th Cir. 2013).

Considering the record as a whole, substantial evidence supports the ALJ's findings and Garvin has failed to show error. Accordingly, it is **RECOMMENDED** that the Commissioner be **AFFIRMED**, and judgment be entered against Garvin.

**ENTERED** in Fort Myers, Florida on August 23, 2024.

_____
Kyle C. Dudek
United States Magistrate Judge

Copies: All Parties of Record

# NOTICE TO PARTIES

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1. To expedite resolution, parties may file a joint notice waiving the 14-day objection period.